IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Allen B. Hudson, | ) | C/A No.: 8:23-cv-6422-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Plumbers and Steamfitters Local No. 150 Pension Fund; Plumbers and Steamfitters Local Union No. 150; Southern Benefit Administrators, Incorporated, | ) ) ) ) ) | **ORDER AND OPINION** |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on a motion to transfer venue filed by Plumbers and Steamfitters Local No. 150 Pension Fund and Southern Benefit Administrators, Incorporated ("SBAI") (collectively, "Moving Defendants"). [Doc. 19; *see* Docs. 25; 30.] This motion is ripe for review.

## **BACKGROUND**

**Procedural background**

Plaintiff originally filed this action in the Edgefield County Court of Common Pleas, alleging his retirement benefits were improperly calculated under the applicable employee pension benefit plan (the "Plan"), and asserting multiple claims for violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). [Doc. 1-1.] On December 11, 2023, Moving Defendants removed the action to this Court. [Doc. 1.]

On January 18, 2024, Moving Defendants filed the instant motion to transfer venue, seeking transfer from this district ("D.S.C.") to the Middle District of Tennessee

("M.D.T."), Nashville Division, pursuant to 28 U.S.C. § 1404(a).  [Doc. 19.]  Also pending before the Court are a motion to dismiss filed by Plumbers and Steamfitters Local Union No. 150 (the "Union")[1] and Moving Defendants' motion to stay discovery pending ruling on the motion to transfer venue.  [Docs. 21; 29.]

**Facts alleged**

In 1966, Plaintiff began working as a welder for the Union–where his father worked his whole life–and he enrolled in the Plan.  [Doc. 1-1 ¶¶ 1, 21.]  The Plan is administered in Goodlettsville, Tennessee, which is the headquarters of the Plan's third-party administrator, SBAI.  [Doc. 19-1 ¶¶ 3–4.]  Plaintiff worked for and through the Union from 1966 to 1970, 1977 to 1991, and 2012 to 2019, always in and around South Carolina.  [Doc. 1-1 ¶¶ 3, 23, 26, 30.]  In 2019, Plaintiff retired when he became fully disabled due to prolonged beryllium exposure from his welding work.  [*Id.* ¶ 31.]

Plaintiff alleges that in December 2020, he applied for the Plan benefits duly earned through his work for the Union.  [*Id.* ¶ 39.]  The Union, and all other Defendants, had previously confirmed to Plaintiff that he had fully and irrevocably vested in the Plan.  [*Id.* ¶¶ 47–48.]  Nevertheless, the Union denied Plaintiff's full rightful pension benefits, asserting that he had failed to accrue the requisite years of vested service credit to receive his full pension.  [*Id.* ¶¶ 49–50.]

---

[1] The Complaint also named Plumbers and Steam Fitters Association of Atlanta, Inc. as a Defendant and alleged that "[u]pon information and belief, Defendant Plumbers and Steam Fitters Association of Atlanta, Inc. is the successor in interest to Defendant Plumbers and Steamfitters Local Union No. 150."  [Doc. 1 ¶ 5.]  The Complaint references the two Defendants collectively as the "Union."  [*Id.*]  However, on March 11, 2024, Plumbers and Steam Fitters Association of Atlanta, Inc., was dismissed without prejudice from this action.  [Doc. 45.]

Plaintiff alleges that the Union's calculation of Plaintiff's service credit arises from a failure to accurately record his work; specifically, an employee of the Union, Jeff Rice, had altered his punch cards. [*Id.* ¶ 50.] The punch cards from 1967, 1975, and 1976 were altered to reflect only 9.875 years of vested service, rather than the proper calculation of 10 years. [*Id.*] Furthermore, Plaintiff alleges that the Union failed to credit Plaintiff with three years of military service, as required by the Plan and federal law. [*Id.* ¶¶ 22–25.] When the U.S Army honorably discharged Plaintiff, he returned to the Union office and requested to return to work, but a representative of the Union rejected him. [*Id.* ¶ 25.]

Despite evidence that Plaintiff has, in fact, accrued sufficient years of vested service, he alleges that the Union, along with the other Defendants, have wrongfully refused to pay him his full pension of $985.00 a month. [*Id.* ¶ 1.] Plaintiff alleges that the Union was the "Plan Sponsor," the "Plan Administrator Sponsor," and a "named or functional fiduciary as to the Pension Plan," and that SBAI was the "Claims Administrator of the Pension Plan when Plaintiff made his claim for Pension Plan benefits." [*Id.* ¶¶ 8–10, 61, 68.]

## **APPLICABLE LAW**

A civil action may, except as otherwise provided by law, be brought only in

> (1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in

3

which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Section 1404(a) of Title 28 of the United States Code provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a). District courts have wide discretion to transfer an action under § 1404(a) "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted).  However, 28 U.S.C. Section 1404(a) cannot be used by a defendant to defeat advantages accruing to a plaintiff who has chosen a forum which, though inconvenient to defendant, is a proper forum.  *Van Dusen*, 376 U.S. at 633–34.

## DISCUSSION

As a preliminary matter, it is undisputed that this case could been brought in M.D.T. ERISA actions may be brought in the district where (1) the plan is administered, (2) the breach took place, or (3) a defendant resides or may be found.  29 U.S.C. § 1132(e)(2). "An ERISA plan is administered where the plan is managed." *Blevins v. Pension Plan for Roanoke Plant Hourly Emps. of ITT Indus. Night Vision*, No. 6:10-cv-03261-JMC, 2011 WL 2670590, at *1 (D.S.C. July 8, 2011) (internal quotations omitted).  Thus, venue is proper where a third-party administrator administers and manages the plan.  *Id.*; *Wausau Benefits, Inc. v. Liming*, 393 F. Supp. 2d 713, 716–17 (W.D. Wis. 2005) (noting the headquarters of third-party administrator was a proper ERISA venue because that is

4

where the plan was administered).  As noted, the Plan is administered in Goodlettsville,

Tennessee, which is also the headquarters of the Plan's third-party administrator, SBAI.

[Doc. 19-1 ¶¶ 3–4.]  Because the Plan is administered in Tennessee, venue is proper in

the M.D.T.[2]

The parties address numerous "Public and Private factors" in arguing whether this

case should be transferred.  As stated by this Court:

> Notwithstanding the fact there is no such as thing as a
> specific, one-size-fits-all standard for the Court to employ
> when adjudicating § 1404(a) motions, the Court is not bereft
> of some guidance. For instance, the Court will weigh and
> balance both Public and Private factors in its determination as
> to whether it should transfer a case under this statute.
> FEDERAL PRACTICE AND PROCEDURE § 3847. Public
> factors, which concern the statutory consideration of the
> interest of justice, include judicial economy, the district court's
> familiarity with the governing law, the local interest in deciding
> local controversies at home, and whether the docket in one
> court is more congested than the other. *Id.* "Private factors
> include the statutory considerations of convenience of the
> parties and witnesses, but also often include the plaintiff's
> forum preference, where the claim arose, and the relative
> ease of access to sources of proof." *Id.* The Court notes,
> however, this list is by no means an exclusive one.

*Del Zotto v. Universal Physician Servs., LLC*, 214 F. Supp. 3d 499, 502 (D.S.C. 2016).

**Public factors**

The parties first dispute whether M.D.T. or D.S.C.'s docket is more congested.

Moving Defendants submit evidence that, according to the 2023 Federal Judicial

Caseload Statistics, there were 7,242 civil cases pending in D.S.C., compared to only

1,310 cases in M.D.T.  *See* FEDERAL JUDICIAL CASELOAD STATISTICS 2023

---

[2] Venue is also proper in Tennessee because that is where one of the Defendants, SBAI, resides.  29 U.S.C. § 1132(e)(2).

TABLES, https://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2023-tables (last visited Mar. 29, 2024) (listing table titled "Civil Cases Filed, Terminated, and Pending, by Jurisdiction" under "U.S. District Courts-Civil" heading).  However, as Plaintiff notes with supporting evidence, "[a] recent account of the caseload of the respective courts reflects 1,168 pending civil cases in [M.D.T.] and 10,737 pending civil cases in [D.S.C.]," and "setting aside the 8,624 products liability cases assigned to Judge Gergel alone, [D.S.C.] has a caseload of only 2,113 pending civil cases" and has 13 district judges in total, with nine supporting magistrate judges, whereas [M.D.T.] has four district judges and three magistrate judges.  [Docs. 25 at 6–7; 25-1; 25-2; 25-3.]  Moving Defendants argue in response that Plaintiff "slices and dices" the numbers, for instance, including all four senior D.S.C. judges in calculating average caseload, even though such judges have a lower caseload and M.D.T. has no senior judges.  [Doc. 30 at 6 (internal quotation marks omitted).]

A review of the parties' arguments and evidence indicates the caseload factor is neutral and does not weigh in favor of either party where it appears, as relevant to Plaintiff's case, neither docket is significantly more congested than the other.

The parties next dispute D.S.C. and M.D.T.'s respective familiarity with ERISA matters, with Plaintiff arguing D.S.C. has handled more than four times the number of ERISA cases than has M.D.T. [Doc. 25 at 7, Doc. 25-4], and Moving Defendants arguing that because an ERISA case presents a federal question—as opposed to a state-law question—the familiarity-with-governing-law factor is neutral.  [Doc. 30 at 5–6.]

The Court agrees with Defendants and finds this factor is also neutral and does not weigh in favor of either party.  *See, e.g., Sec. & Exch. Comm'n v. Comm. on Ways &*

*Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 229 (S.D.N.Y. 2015) ("Where a case raises a federal question, the 'governing law' factor generally provides no basis for granting a transfer motion, because all federal courts are presumed to be equally familiar with federal law." (some internal quotation marks omitted)); *Goff v. Nationwide Mut. Ins. Co.*, No. CV 17-7358-PSG-AFMX, 2018 WL 6003578, at *7 n.6 (C.D. Cal. Apr. 5, 2018) ("As the case presents a federal question, both fora are presumed to be equally familiar with the law governing the action." (internal quotation marks omitted)); *Friends of Scotland, Inc. v. Carroll*, No. C 12-01255 WHA, 2013 WL 1192956, at *2 (N.D. Cal. Mar. 22, 2013) ("[T]his action involves a federal question, and neither forum is more familiar than the other with the governing law. Therefore, this factor favors neither party.").

Likewise, both D.S.C. and M.D.T. have a local interest in deciding the controversy. As Plaintiff argues [Doc. 25 at 8], South Carolina has a strong interest in determining the benefits he is entitled to under the Plan given that he is a South Carolina citizen [Doc. 1-1 ¶ 5]. *See, e.g.*, *Jorgensen v. Scolari's of Cal., Inc.*, No.: SACV 14-01211-CJC(RNBx), 2014 WL 12480261, at *3 (C.D. Cal. Nov. 12, 2014) ("California has a strong interest in protecting the rights of its citizens and monitoring the pension plans its citizens anticipate receiving benefits from in the future."). However, M.D.T. also has a local interest in deciding any controversy related to the Plan that is administered in Tennessee. *See, e.g., Coleman v. Brozen*, No. 4:19-CV-705, 2020 WL 2200220, at *7 (E.D. Tex. May 6, 2020) (explaining that the Eastern District of Texas had a local interest in the dispute when the plan was administered there). The Court concludes that this factor does not weigh significantly either in favor or against transfer.

On the other hand, the Court concludes that the judicial economy factor weighs significantly against transfer. Plaintiff is correct that this Court issued an ERISA Case Management Order on January 9, 2024 [Doc. 13], and there have been many filings since that time, including the motion to dismiss filed by the Union and Moving Defendants' motion to stay discovery pending ruling on the motion to transfer venue [Docs. 21; 29]. This Court has spent time considering these motions, and it would be inefficient for another court to have to duplicate that work. Based on this factor, the Court concludes that the public factors weigh against transfer.

**Private factors**

The first relevant private factor is Plaintiff's choice to file in this District. Federal courts give substantial weight to a plaintiff's choice of forum, and the Supreme Court has stated that "[i]n any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown." *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947). As this Court has stated, "[w]hen a plaintiff files a suit in his home forum, a defendant seeking transfer bears the burden of demonstrating that the balance of convenience among the parties and witnesses is *strongly* in favor of the forum to which the transfer is sought." *Checkeeper, LLC v. Nelliparamban*, No. CV 6:18-1367-HMH, 2018 WL 10126745, at *3 (D.S.C. July 20, 2018) (internal quotation marks omitted). In fact, in ERISA cases, "plaintiff's choice of forum" must be given "somewhat greater weight" than in other types of cases "as evidenced by ERISA's liberal venue provision." T*rustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) (internal quotation marks omitted).

The Court concludes that that factor weighs strongly against transfer. As offered by Plaintiff and not countered by Moving Defendants:

> Mr. Hudson is a 73-year-old retiree and Army veteran with substantial health issues. He is disabled due to his exposure to beryllium throughout his career. . . . Additionally, his resources are limited, particularly in light of the denial of his pension benefits. His attorney is located and barred in South Carolina. He has selected his home forum, the [D.S.C.], which is the same forum in which he worked to accrue his pension for almost 25 years. This is also the same forum in which Defendants breached their duty to provide ERISA pension benefits.
>
> By contrast, these Defendants are well-funded organizations who have each already hired counsel in the [D.S.C.], all of whom practice in South Carolina or have been admitted pro hac vice. . . .

[Doc. 25 at 10–11 (citations omitted).] Additionally, it is undisputed that courts consider the location of an ERISA breach and that Plaintiff's claim arose where the breach took place. *Blevins*, 2011 WL 2670590, at *2.

The parties dispute the remaining two relevant private factors: (1) the convenience of the parties and witnesses and (2) the relative ease of access to sources of proof. *See Del Zotto*, 214 F. Supp. 3d at 502. Applicable to both factors, the parties also dispute whether the Court's review is limited to the record before the plan administrator.[3]

The Court notes that, although the convenience of witnesses is a factor for consideration in ERISA cases, the factor is generally not as significant as it is in other types of cases. *Island View Residential Treatment Ctr. v. Kaiser Permanente*, No. 1:09-

---

[3] The Court rejects Moving Defendants' assertion that Plaintiff—in arguing that the Court's review is limited to the record before the plan administrator—has waived his right to call witnesses should there be a hearing.

cv-3, 2009 WL 2614682, at *3 (D. Utah Aug. 21, 2009) ("[T]he convenience of the witnesses is not as important an issue in this case because the court's review in ERISA cases is generally limited to the administrative record."). However, as stated in its ERISA Case Management Order, the Court may hold a hearing "[i]n its discretion" [Doc. 13 at 3], and Moving Defendants maintain that they will ask for a hearing to question Plaintiff regarding his allegations that punch cards were altered [Doc. 30 at 2]. The Court notes that M.D.T. is where the Plan is administered, payment decisions are made, and relevant witnesses are located. [*See id.* at 3 (Moving Defendants identifying multiple relevant witnesses located in M.D.T.).] Moving Defendants additionally argue "SBAI will be highly inconvenienced by trying this case in [D.S.C.], considering its employee-witnesses may have to travel hundreds of miles even though most relevant witnesses and sources of proof are in Tennessee." [*Id.*] In total, the Court concludes that the factor of the convenience to parties and witnesses weighs in favor of transfer. Nonetheless, the factor is not sufficient to outweigh Plaintiff's interest in suing in his home forum.[4] The Court

---

[4] Moving Defendants assert, and Plaintiff disputes, that courts frequently transfer ERISA cases from the venue where the beneficiary resides to the venue where the plan is administered. [Docs. 19 at 6; 25 at 14–16; 30 at 7–8.] However, the Court concludes that the cases Moving Defendants cite on this point are of limited assistance in resolving Moving Defendants' motion to transfer.

In *Case v. Generac Power Sys., Inc.*, No. C21-752 RSM, 2021 WL 4033299 (W.D. Wash. Sept. 3, 2021), the court transferred the case from the Western District of Washington to the Eastern District of Wisconsin, in part, on a forum selection clause, and the court also held it would transfer the case based on 28 U.S.C. § 1404(a). [*Id.* at *1, 3–4.] As to the latter conclusion, the court found all relevant actions occurred in Wisconsin and that the action related to Washington only insofar as Plaintiff resided in Washington. *Id.* at *4. The court further noted that "Plaintiff's reliance on his individual convenience would appear to weaken in this instance where Plaintiff seeks to represent a class, the vast majority of which resides in Wisconsin." *Id.* That case is distinguishable from the instant one for multiple reasons, including that the breach in this case occurred in the

concludes that the private factors, as a whole, are neutral or at most slightly weigh against transfer.  In light of the Court's conclusion that the public factors—and particularly the factor of judicial economy—weigh against transfer, the motion to transfer is denied.

## **CONCLUSION**

Based on the above, Moving Defendants' motion to transfer [Doc. 19] is DENIED. Moving Defendants' related motion to stay discovery pending ruling on motion to transfer venue [Doc. 29] is FOUND AS MOOT.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States District Judge

Greenville, South Carolina
April 5, 2024

---

district where the action was filed, there is no forum selection clause at issue in this case, and there are no class allegations.

Likewise, the cases Moving Defendants cite concerning venue transfers in ERISA disputes between two corporations are distinguishable.  In *Delta Air Lines, Inc. v. W. Conf. of Teamsters Pension Tr. Fund*, 722 F. Supp. 725 (N.D. Ga. 1989), the court concluded that venue was improper in the district where the case had been filed and thus the court was not presented with the question before the Court here—whether to transfer a case from one district in which it could have been filed to another.  *Id.* at 731.  And, in *National Air Traffic Controllers Association v. Dental Plans, Inc.*, 407 F. Supp. 2d 1 (D.D.C. 2005), the court transferred an ERISA case to the Northern District of Georgia, where the plan was administered and several of the defendants resided.  *Id.* at *3.  In that case, however, although the National Air Traffic Controllers Association ("NATCA") was from the District of Columbia, it joined in only two of the nine counts raised in the complaint and none of the four individual plaintiffs resided there.  *Id.*